E-FILED
Thursday, 06 February, 2020 09:52:55 AM
Clerk, U.S. District Court, ILCD

```
              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF ILLINOIS


UNITED STATES OF AMERICA,
                                 Docket No. 18-cr-20014
         Plaintiff,                         18-mj-7051

   vs.                           Urbana, Illinois
                                 March 16, 2018
                                 4:15 p.m.
JOE MORRIS,

         Defendant.


       PRELIMINARY HEARING (Waived) & DETENTION HEARING

           BEFORE THE HONORABLE ERIC I. LONG
              UNITED STATES MAGISTRATE JUDGE


A P P E A R A N C E S :

For the Plaintiff:      EUGENE L. MILLER, ESQUIRE
                        Assistant United States Attorney
                        201 South Vine Street
                        Urbana, Illinois 61802
                        217-373-5875

For the Defendant:      JOSEPH P. CHAMLEY, ESQUIRE
                        Evans Froehlich Beth & Chamley
                        44 Main Street, P.O. Box 737
                        Champaign, Illinois 61820
                        217-359-6494




Court Reporter:         LISA KNIGHT COSIMINI, RMR-CRR
                        U.S. District Court
                        201 South Vine
                        Urbana, Illinois 61802

Proceedings recorded by digital sound recording;
proceedings reported by mechanical stenography from said
recording; transcript produced by computer.
```

1                    (In open court, 4:15 p.m.)

2              COURTROOM DEPUTY:  This is Case Number

3    17-mj-7051, United States of America versus Joe Morris.

4              Present in person on behalf of the government

5    is Eugene Miller.

6              Also present in person is the defendant with

7    counsel, Joe Chamley.

8              THE COURT:  Good afternoon.

9              Mr. Morris, just as a reminder, my name's Eric

10   Long.  I'm the magistrate judge assigned to your case.

11             We're here this afternoon on a preliminary

12   hearing and detention hearing.  Both parties ready to go?

13             MR. CHAMLEY:  Yes, Your Honor.

14             MR. MILLER:  We are, Your Honor, although my

15   understanding from Mr. Chamley was that we were -- we can

16   proceed but he's going to waive the prelim and proceed to

17   the detention hearing.

18             THE COURT:  Okay.  Is that your plan at this

19   point?

20             MR. CHAMLEY:  That is correct, Your Honor.

21             THE COURT:  Okay.  All right, so let me make

22   sure Mr. Morris understands what this means.

23             So the preliminary hearing is a hearing where I

24   have to determine whether there's probable cause that a

25   crime was committed and that you're the person that

```
 1   committed that crime.  My understanding is your intention
 2   is going to be to waive that hearing.
 3              What that hearing would have been is it would
 4   have been a situation where the government would have
 5   presented evidence to demonstrate to me whether probable
 6   cause existed.  You would have been represented by
 7   counsel during that hearing.  Your lawyer would be
 8   allowed to cross-examine any witnesses that might
 9   testify.  You also would be allowed to present evidence
10   and subpoena witnesses if you wanted in order to rebut
11   the evidence that the government proved.
12              Now, you, you wouldn't have been allowed to
13   object to evidence in the way that it was obtained; that
14   comes later.
15              So, first, let me ask you:  Do you understand
16   what that hearing would have been?
17              DEFENDANT MORRIS:  Yes.
18              THE COURT:  All right.  And you want to go
19   ahead and waive that hearing today?
20              DEFENDANT MORRIS:  Yes.
21              THE COURT:  All right.  Has anybody promised
22   you anything or given you any assurances of any kind to
23   get you to waive that hearing?
24              DEFENDANT MORRIS:  No.
25              THE COURT:  Has anybody threatened you or tried
```

1  to force you to give up that hearing?

2              DEFENDANT MORRIS:  No.

3              THE COURT:  All right.  And you're doing this

4  freely and voluntarily?

5              DEFENDANT MORRIS:  Yes.

6              THE COURT:  All right.  I'll find the waiver to

7  be both knowing and voluntary.

8              And so we'll turn, then, to the question of

9  detention.

10             Mr. Morris, let me explain to you what

11 detention is, the detention hearing is.  The government's

12 asked that you be detained.  Okay?  So what that means is

13 they want to have you held in custody until the trial is

14 concluded.

15             I'm going to have a hearing; it's what we're

16 going to do next.  And I'm going to determine whether

17 there are -- whether you pose a risk of not appearing at

18 future court hearings or, alternatively, whether you pose

19 a danger to the community or somebody in the community.

20             I want to make sure you understand that you're

21 entitled to the presumption of innocence.  This applies

22 at all stages of these proceedings right up until the

23 trial concludes.  I tell you this because a couple other

24 things that I have to do today are going to talk about

25 that.  The weight of the evidence, I'm going to have to

1   make some findings as it relates to that.  I may make
2   some other comments as well.  None of that, though, in
3   any way affects that presumption of innocence.  You are
4   presumed innocent right up until the close of trial.
5           Next, we're going to proceed under what's
6   called the Bail Reform Act.  Under the Act, defendants
7   shall be released prior to trial unless a judicial
8   officer finds that no condition or combination of
9   conditions exist that will reasonably assure your
10  appearance at future court hearings or, alternatively,
11  reasonably assure me of the safety of the community or
12  somebody in particular in the community.
13          Now, the Act requires that I impose the least
14  restrictive conditions necessary in order to give me
15  those reasonable assurances.  But if I conclude that
16  there are no set of conditions that will give me those
17  assurances, then the law requires that I hold you in
18  custody.
19          Now, it's the government's burden of proving by
20  a preponderance of the evidence that you pose a risk of
21  not appearing at future court hearings or, alternatively,
22  by a little higher standard called "clear and convincing
23  evidence" that you pose a danger to the community or
24  somebody in particular in the community.
25          Now, as I go through this hearing, I'm going to

consider a number of factors.  I'm going to consider the nature and circumstances of the offense that you're alleged to have committed.  I'm going to look at the weight of the anticipated evidence against you.  I'm going to consider your personal history and characteristics.  That includes your family ties, your employment history, your length of residence in the community, your past conduct, past criminal record, if any; your history of any drug or alcohol abuse; and whether you were on any kind of conditional release at the time of the alleged violations.  I'm also going to look at the nature and seriousness of the danger to the community and to others at large.

    So with all that explained, Mr. Miller, if you want to proffer the government's evidence --

    MR. MILLER:  Your Honor, --

    THE COURT:  -- to begin with, and then we'll turn to argument in a moment.

    MR. MILLER:  Your Honor, we would ask the Court to take judicial notice of the information in the affidavit, the criminal complaint, as well as the information in the pretrial services report.

    And then we would also proffer, as we have in prior hearings, the additional incident, in addition to those laid out in the application, detailed by order,

```
 1   that around June the 17th of this year, 2018, the
 2   defendant, along with Mr. McWhorter and Michael Hari,
 3   traveled to Effingham, or at least near Effingham,
 4   Illinois, with an incendiary device [inaudible] railroad
 5   tracks down there to possibly derail a train.  That did
 6   not occur, but we have corroborated the [inaudible] in
 7   the area that Mr. McWhorter said [inaudible] there was
 8   incendiary damage [inaudible].
 9              THE COURT:  All right.
10              Mr. Chamley, your proffer of evidence on behalf
11   of your client.
12              MR. CHAMLEY:  Thank you, Your Honor.  May it
13   please the Court and counsel.
14              What we would suggest is some information that
15   came in the Pretrial Services Report and hit on the
16   factors that the Court just enumerated.
17              The issue of employment history.  Mr. McWhorter
18   [sic] has a good employment history.  He has -- most of
19   his life has been spent in the community, as the Pretrial
20   Service report indicates.  He has family ties in the
21   area.  He has no criminal history conduct at all; there
22   certainly was not an impact of probation of parole
23   because there is no indication of any criminal history by
24   Mr. McWhorter.
25              The, the factors that may be cited I -- by the
```

```
 1   Pretrial Services may be, in my suggestion, taken out of
 2   context of the nature of some of the things that Mr.
 3   Morris has had to deal with in his life and certainly
 4   challenges that he seems to have overcome.
 5              So, I would respectfully suggest that all of
 6   the factors that the Court laid out -- employment, family
 7   ties, connection to the community -- they're here, as
 8   laid out in the Pretrial Services Report.
 9              And the negative inferences that are drawn, I
10   would suggest, are actually taken out of context; are
11   other challenges that Mr. Morris faced in his life which
12   he's actually overcome.
13              So I think that this is an appropriate case for
14   a pretrial release; and certainly any type of condition
15   that the Court would want to impose, such as a home
16   detention --
17              THE COURT:  Mr. Chamley, let me interrupt you,
18   only because I'm going to turn back to you for argument
19   in a moment.
20              MR. CHAMLEY:  Thank you.
21              THE COURT:  I just want to make sure I've got
22   the evidence in place now, and then I'll let Mr. Miller
23   argue and then turn back to you for argument.
24              MR. CHAMLEY:  Very good.  Thank you, Your
25   Honor.
```

```
 1                THE COURT:  Okay.
 2                Mr. Miller, your argument in support of
 3   detention.
 4                MR. MILLER:  Thank you, Your Honor.
 5                The United States is requesting detention here,
 6   both on a risk of nonappearance and risk of danger to the
 7   community.
 8                Regarding risk of nonappearance, it appears
 9   unclear what the defendant's living situation would be if
10   he were released.  His most recent residence was living
11   in an office in Clarence, Illinois, owned by Codefendant
12   Michael Hari.  Michael Hari is now in custody.
13                Prior to that, he lived with his parents.  It
14   appears from the Pretrial Services Report that residence
15   is no longer available to him.
16                And prior to that, he appears to have lived in
17   Mexico from about May of 2015 to January of 2016.  He
18   does have a passport, has been out of the country, does
19   not have any stable living situation that would allow
20   either a third-party custodian or electronic monitoring
21   that we can tell; and, therefore, we think he does
22   present a risk of nonappearance.
23                Having said that, the United States relies
24   heavily on the risk of danger to the community because we
25   believe clear and convincing evidence shows that there
```

are no combination of conditions that could reasonably assure the safety of the community, given the allegations in the affidavit.

Obviously, the nature and circumstances of this offense, the possession of a machine gun," are serious; and, by themselves, there would certainly be an argument, we believe, as to whether the defendant should be detained based on safety to the community.  Although, the evidence shows that he possessed and fired semiautomatic weapons and that he was involved with Michael Hari, then, of trying to hide those semiautomatic weapons from law enforcement, having them held by somebody else.

THE COURT:  You mean fully automatic, right?

MR. MILLER:  Full-- thank you.  Fully automatic weapons, exactly, Your Honor.

But as we look on at the other allegations, it becomes clear the danger he presents to the community. As this Court has already heard in other detention hearings and has read in the affidavit, the defendant was involved with Michael Hari and Michael McWhorter in August in traveling to Minnesota and throwing an explosive device into the Islamic Center there.  It exploded while five people were present, and the affidavit indicates that that explosive device was manufactured by the defendant, Joe Morris.

1          Even more troubling is, in November of last
2   year, another explosive device was made by the defendant,
3   Joe Morris, and thrown into the Women's Health Practice.
4   And in this case, the allegations are that that device
5   was thrown by this defendant, Joe Morris.  The window was
6   broken.  It was thrown into the Health Center.  It did
7   not explode; but according to the affidavit, he later
8   complained to a source that, in fact, it didn't go off
9   and didn't know why.  So clearly, according to the
10  affidavit, the allegation is that he threw that explosive
11  device into the Women's Health Practice with the desire
12  that it explode.
13         On top of that, we have the fact that he was
14  involved with Michael Hari, according to the affidavit,
15  in planting explosive materials at the residence of an
16  individual identified as Joe O. -- J.O. in the affidavit.
17         We also have evidence that he was involved in a
18  home invasion where the individuals -- with the same
19  individuals while they were armed with automatic weapons.
20  He was also involved in three robberies of Walmart in
21  Illinois.
22         And when that all gets assessed by the Court,
23  we would suggest this really isn't a close case regarding
24  this defendant.
25         It is true:  He doesn't have any significant

1   criminal history at the age of 22.  There are some

2   disturbing incidents in his past, including, I believe,

3   setting his parents' home on fire at a very young age.

4           But we think his recent conduct -- basically

5   from August of last year until now -- is so extensive

6   that gives the Court the best picture of the risk that he

7   presents if he would be released.  We do believe the

8   weight of evidence is strong, based on all of the

9   allegations in the affidavit and the corroboration of

10  those statements that are made by multiple witnesses

11  regarding the defendant's conduct.

12          And, therefore, we are asking the Court to find

13  that the evidence is clear and convincing; that there

14  really are no conditions that can reasonably assure the

15  safety of the community that would allow the defendant to

16  be released.

17          THE COURT:  All right, --

18          MR. MILLER:  Thank you.

19          THE COURT:  -- Mr. Miller, before you sit

20  down, --

21          MR. MILLER:  Yes.

22          THE COURT:  -- there's a reference to charges

23  in the District of Minnesota.  Do you know anything more

24  about that?  Has there been a warrant?

25          MR. MILLER:  I do.  We've been in contact with

1  Minnesota.
2      THE COURT: Is there a warrant outstanding?
3      MR. MILLER: They have charged the defendant --
4  my understanding is, from speaking with them -- by
5  criminal complaint with -- it's basically Section -- 18
6  USC Section 844(i), which is commonly referred to as
7  arson, but the use of a destructive device or fire to
8  cause damage to a building in interstate commerce.
9      That's, I believe, been charged by complaint
10 and that there is a warrant issued for him; and if it has
11 not yet been, it will be lodged as a detainer against the
12 defendant.
13     THE COURT: All right.
14     MR. MILLER: Thank you.
15     THE COURT: Mr. Chamley, your argument.
16     MR. CHAMLEY: Yes.
17     Thank you, Your Honor. May it please the Court
18 and counsel.
19     I think this Court -- which I know this Court
20 will take into account not just the allegations -- which
21 are just that, allegations; as the Court has already
22 indicated, there's the presumption of innocence, as the
23 Court well knows and has repeated -- but it takes into
24 account the entire life of Mr. Morris. Again, the issue
25 of he has had employment, steady employment. He has

1   lived in the community most of his life.

2           Yes, this reference to living overseas for --
3   or in a foreign country here for a few years is made.
4   Again, is that, is that an innocent reference, or is that
5   directly related to these charges?

6           The issue of indiscretions and things that may
7   have happened in his youth.  Again, is that something
8   he's overcome, or is that something that should be held
9   against him?  I would suggest to the Court that maybe
10  that's something that should be counted as something he's
11  been able to overcome, quite frankly, is what I would
12  suggest to the Court.

13          He does have family in the area.  There's no
14  indication that his family seems to be involved in any of
15  this, these alleged charges.  We do think there are
16  conditions -- some type of home confinement might be
17  entirely appropriate with monitoring -- that would serve
18  to protect the general public.

19          There's, doesn't seem to be an indication that
20  there's a threat to any specific person in general, any
21  specific person.

22          And so we do think that, also, it appears to
23  be -- just in reading this information here, looking at
24  the pecking order, just taking the affidavit at face
25  value -- Joe Morris is not the ringleader by any, by any

1  chance. So we believe that that's something that this
2  Court should consider.
3       We do believe that there would be conditions
4  that would be appropriate. We note that the government
5  has the burden of showing that there are no conditions.
6  So, we believe that pretrial detention would be
7  inappropriate. We think this is an appropriate case for
8  release.
9       THE COURT: All right.
10      MR. CHAMLEY: Thank you.
11      THE COURT: Thank you, Mr. Chamley.
12      Mr. Miller, anything in rebuttal?
13      MR. MILLER: Nothing additional, Your Honor.
14      THE COURT: All right.
15         (Brief pause in proceedings.)
16      THE COURT: All right. After reviewing the
17 evidence, hearing argument of counsel, I'm going to find
18 that the government has satisfied its burden, both on the
19 potential risk of nonappearance, as well as the risk of
20 danger to the community.
21      The nature and circumstances of the alleged
22 offense involve the possession of a machine gun. This is
23 a serious offense. The weight of the evidence against
24 the defendant is strong, based on the information that's
25 included in the complaint affidavit, including a number

```
 1    of admissions by his codefendants relating to his
 2    involvement and their personal involvement.
 3              The history and characteristics of the
 4    defendant play a little bit both ways.  He does have ties
 5    to the community and has been around for some time and
 6    has maintained a pretty relatively steady employment,
 7    although he currently has no significant employment,
 8    earning money through odd jobs.
 9              He's also living what appears to be in the back
10    of one, one of his codefendant's office, both of which
11    indicate a lack of stable residence and stable
12    employment -- although he has lived most of his life in
13    the district.
14              He also has ties to Mexico, which is
15    disconcerting as well.
16              More importantly, he has an alleged history of
17    violent behavior that has clearly escalated in the last
18    few months based on the information contained in the
19    affidavit, despite having no criminal record.
20              This information, of course, relates to the
21    robberies of the three Walmart stores; the armed
22    residential home invasion; the bombing up in Minnesota
23    for which he's charged and for which there's an
24    outstanding, likely an outstanding warrant that will be,
25    according to the government, lodged as a detainer even if
```

```
 1   the Court were to consider his release; and, of course,
 2   the planting of the bombs in his neighbor's garage as
 3   well.
 4            The bottom line is:  His participation has been
 5   in very serious and dangerous offenses; and the risk of
 6   danger, in my opinion, is tremendous.  And given the
 7   nature of the recent violent history, along with the
 8   nature of the firearms involved in this case, the
 9   combination is simply too serious for me to set
10   conditions that will reasonably assure the safety of the
11   community.
12            So, I'm going to enter a written order of
13   detention, holding, holding Mr. Morris in custody pending
14   the trial in this case.
15            We'll get back together, presuming that the
16   grand jury returns an indictment, for purposes of the
17   arraignment.
18            Mr. Miller, anything further on behalf of the
19   government?
20            MR. MILLER:  No, Your Honor.  Thank you.
21            THE COURT:  Mr. Chamley, anything more we can
22   do on behalf of your client?
23            MR. CHAMLEY:  No, thanks.
24            THE COURT:  All right.  We'll stand in recess
25   for the time being.
```

1   You'll be remanded to the custody of the
2   Marshal Service pending the trial in this case.
3       We'll reconvene for scheduling order and
4   arraignment, assuming the grand jury returns an
5   indictment.
6       So, that will be all.
7       (Hearing concludes, 4:34 p.m.)
8
9                  * * * * * * * * *
10
11              REPORTER'S CERTIFICATE
12      I, LISA KNIGHT COSIMINI, RMR-CRR, hereby certify
13  that the foregoing, to the best of my ability, is a
14  correct transcript from the proceedings digitally
15  recorded before the magistrate judge in the
16  above-entitled matter.  I was not personally present for
17  said proceedings.
18      Dated this 2nd day of February, 2020.
19
20
21          _____s/Lisa Knight Cosimini_____
            Lisa Knight Cosimini, RMR-CRR
22          Illinois License # 084-002998
23
24
25